# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY J. BALLARD, | ) |
|        Plaintiff, | ) |
| v. | ) Case No. CIV-09-108-SPS |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) |
|        Defendant. | ) |

## OPINION AND ORDER

The claimant Mary J. Ballard requests judicial review of the Commissioner of the Social Security Administration's denial of benefits pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 19, 1959 and was forty-nine years old at the time of the administrative hearing (Tr. 87). She graduated high school, attended college for a year (Tr. 26-27) and has worked as a personal care aide, job coach, and cafeteria worker (Tr. 42). The claimant alleges that she has been unable to work since November 4, 2004 because of mental disorders, *i. e.*, affective mood disorder, anxiety related disorder, and psychoactive substance addiction (Tr. 13, 144).

## Procedural History

The claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on October 11, 2006. Her application was denied. ALJ Michael Kirkpatrick held an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 22, 2008. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had severe mental impairments (affective mood disorder, anxiety related disorder, and psychoactive substance addiction disorder) that limited her to jobs with only simple, routine unskilled tasks requiring no interaction with the general public (Tr.

14). The ALJ concluded that although the claimant could not return to any of her past work, she was nevertheless not disabled because there were other jobs she could perform, *i. e.*, dishwasher, bench assembler, and motel housekeeper (Tr. 18).

**Review**

The claimant contends the ALJ erred: (i) by failing to properly evaluate an "other source" opinion as to her mental limitations from Chiquita Duncan, M.S., L.P., L.A.D.C.; (ii) by failing to properly weigh medical evidence of record, *i. e.*, mental health treatment notes from the Mental Health Services of Southern Oklahoma ("MHSSO") and opinion evidence from Dr. Rebecca Collins, Ph.D.; (iii) by giving controlling weight to opinions from state agency physicians; and, (iv) finding that she could perform any work given her GAF scores and the opinions of Dr. Collins. Because the Court concludes that the ALJ did fail to properly evaluate "other source" evidence, the decision of the Commissioner must be reversed and the case remanded for further analysis.

The claimant received her treatment at MHSSO from several sources, including Leonda Leamaster, M.S., L.P.C. and Dr. Richard Zielinski, M.D., but she was primarily treated by Ms. Duncan (Tr. 176-82). On August 27, 2006, claimant was diagnosed with post-traumatic stress disorder (PTSD), mood disorder, N.O.S., and assigned a Global Assessment of Functioning (GAF) score of 43 (Tr. 179). Ms. Leamaster wrote that claimant's "emotional problems [were] having negative impact on [claimant's] self-care" and "significant interpersonal problems" (Tr. 182). During a counseling session on August 17, 2006, Ms. Leamaster's notes reveal that claimant had been physically and

sexually abused, exhibited a high level of anxiety, and cried throughout the counseling session (Tr. 171). Ms. Duncan met claimant for the first time in September 2006, and she noted that claimant was involved in an abusive relationship (Tr. 170). On October 12, 2006, claimant related feeling a "little manic" and that she "felt a little too high" (Tr. 167). Ms. Duncan's notes for the remainder of 2006 indicate that claimant was doing better, *i. e.*, that her affect was brighter and that she was beginning to develop insight into her issues (Tr. 165-66).

The claimant was reassessed in February 2007, and it was noted that her mood hadn't stabilized and that Dr. Zielinski was "working on her meds and making adjustments" (Tr. 234). Her GAF at that time was assessed at a 45 (Tr. 229). On August 31, 2007, her GAF had increased to 50, but the claimant related that she doesn't want to work because she is lazy (Tr. 224). Further, she related that she had returned to her abusive relationship (Tr. 224). In February 2008, claimant was again assigned a GAF score of 50, and it was noted that claimant's ex-husband had gained full custody of her minor son (Tr. 213).

The claimant was also referred to Dr. Rebecca Collins, Ph.D. subsequent to a court order, which was connected to custody issues with her minor child, which required her to obtain a psychological evaluation (Tr. 176). Dr. Collins evaluated claimant from January 22 through January 30, 2007 (Tr. 188), utilizing several mental health diagnostic techniques, including the WRAT-4, MMPI-2, Substance Abuse Subtle Screening Inventory, and MPD (Tr. 189). On the MMPI-2, the claimant was found to be likely to

experience anxiety, depression, obsessive thinking, and health problems that "might lead to difficulties with thinking clearly or working effectively at resolving family problems" (Tr. 191). Claimant was also found to likely have a substance dependence disorder (Tr. 191). Her MPD profile suggested "marginal psychosocial adjustment and significant psychological distress" (Tr. 192). Dr. Collins concluded that claimant "has trouble dealing with stressful events or relationships", which causes her to "avoid interpersonal development" (Tr. 192). Further, Dr. Collins opined that claimant's "social isolation and fear of others are so disabling that it appears unlikely that she will be able to obtain or retain employment" (Tr. 192). Finally, Dr. Collins diagnosed claimant with bipolar disorder, panic disorder with agoraphobia, chronic PTSD, polysubstance dependence, primary insomnia, and bereavement and assigned claimant a GAF score of 39 (Tr. 195).

Finally, two agency physicians assessed claimant's mental impairments. First, Dr. Everett Bayne, M.D. performed a mental status evaluation on February 19, 2007, and diagnosed claimant with bipolar disorder, panic disorder without agoraphobia, and assigned a GAF score of 55 (Tr. 186). Further, Dr. Bayne opined that claimant "could improve within the next 12 months" with proper treatment and that she was employable (Tr. 186). Finally, Dr. Cynthia Kampschaefer, a non-examining physician, completed a PRT in which she found that claimant suffered from affective disorders and anxiety-related disorders (Tr. 194). Further, she found that claimant had moderate restriction of daily activities, mild limitations in social functioning and maintaining concentration, persistence, or pace, and no episodes of decompensation (Tr. 204).

The claimant argues that the ALJ should have afforded controlling weight to Ms. Duncan's opinions about her mental impairments because treating physician Dr. Richard Zielinski, M.D. supervised Ms. Duncan's work and concurred in her findings. The record does not support this contention, however; there is nothing to indicate that Dr. Zielinski did anything other than prescribe medications for the claimant. But even though he did not have to give controlling weight to *any* of Ms. Duncan's opinions about the claimant's mental impairments, the ALJ nevertheless *was required* to analyze her opinions about the severity of the impairments and their impact on the claimant's ability to work according to 20 C.F.R. § 416.927. *See, e. g.,* 20 C.F.R. § 416.813(d) ("In addition to evidence from the acceptable medical sources . . . we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work."). *See also Bowman v. Astrue*, 511 F.3d 1270, 1274-75 (10th Cir. 2008) (discussing application of Soc. Sec. Rul. 06-03p and noting that "[o]pinions from [other sources] . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."), *quoting* Soc. Sec. Rul., 06-03p ("For opinions from [other] sources such as . . . non-medical professionals, it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion.").

For example, the ALJ should have considered the global assessment of functioning ("GAF") score of 43 assigned by Mr. Duncan. As the Commissioner notes, GAF scores are not necessarily probative of ability to perform work, but a GAF score of 43 does indicate severe functional limitations that may prevent the claimant from performing work. *See Lee v. Barnhart,* 117 Fed. Appx. 674, 678 (10th Cir. 2004) ("A GAF score of fifty or less . . . *does* suggest an inability to keep a job.") [emphasis added], *citing Oslin v. Barnhart,* 69 Fed. Appx. 942, 947 (10th Cir. 2003) ("A GAF rating between 41 and 50 indicates '[s]erious symptoms (*e. g.*, suicidal ideation . . .) OR any serious impairment in social, occupational, or school functioning (*e. g.*, . . . unable to keep a job)[.]'"), *quoting* Am. Psych. Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* p. 34 (4th ed. 2000). *See also Berryhill v. Barnhart,* 64 Fed. Appx. 196, 200 (10th Cir. 2003). The ALJ was clearly not bound by this GAF score, or any other of Ms. Duncan's opinion as to the severity of the claimant's mental impairments, but the ALJ should not have simply rejected it out of hand as he appears to have done here. *See Carpenter v. Astrue*, 537 F.3d 1264, 1267-68 (10th Cir. 2008) ("Although a chiropractor is not an 'acceptable medical source' for *diagnosing* an impairment under the regulations, the agency has made clear that the opinion of such an 'other source' is relevant to the questions of *severity* and *functionality*. The ALJ was not entitled to disregard the 'serious problems' set out in Dr. Ungerland's opinion simply because he is a chiropractor.").

The primary reason given by the ALJ for rejecting Ms. Duncan's opinions is that they were "clearly based on the claimant's subjective complaints, which I do not find to

be fully credible." (Tr. 16). The ALJ did not, however, properly evaluate the claimant's credibility. In this regard, a credibility determination is entitled to deference unless the ALJ misread the evidence taken as a whole. *See, e. g., Casias,* 933 F.2d at 801. But a determination "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Absent close links between an ALJ's findings and evidence somewhere in the written decision, a credibility determination amounts to nothing more than unhelpful boilerplate. *See Hardman v. Barnhart,* 362 F.3d 676, 679 (10th Cir. 2004) ("[B]oilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."), *citing Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001). The analysis here amounts to little more than the "conclusion in the guise of findings" condemned by *Kepler* and is thus legally deficient, *i. e.*, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . She did not allege any side effects from her medications. She received treatment which has consisted of counseling and medication therapy without further recommendation of more intensive therapy" (Tr. 16). *See, e. g., Kepler*, 68 F.3d at 391 (10th Cir. 1995) (The ALJ must "explain why the specific evidence . . . led him to conclude claimant's subjective complaints were not credible."). The ALJ should have

-9-

rendered a more thorough analysis of the claimant's credibility in any event, particularly if (as the ALJ claimed) this analysis was a basis for rejecting Mr. Duncan's opinions.

Because the ALJ failed to properly evaluate "other source" evidence about the severity of the claimant's mental impairments, the decision of the Commissioner must be reversed and the case remanded for further analysis. On remand, the ALJ should re-evaluate the claimant's credibility and give proper consideration to the opinions of Ms. Duncan. If this analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work she can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied, and the decision of the Commissioner is therefore not supported by substantial evidence. The Commissioner's decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of September, 2010.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**